UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANA L. MIRACLE,

    Plaintiff,                                        Civil Action No. 06-14510

v.                                                 HON. DENISE PAGE HOOD
                                                     U.S. District Judge
                                                     HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Diana Miracle brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding the case for a determination of whether Plaintiff is entitled to a closed period of benefits.

## PROCEDURAL HISTORY

On October 7, 2003, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset date of May 15, 2002 (Tr. 39). After the Social Security Administration (SSA) denied her benefits, she made a timely request for an administrative hearing, held on February 14, 2006 in Ann Arbor, Michigan (Tr. 275). Administrative Law Judge (ALJ) Ben S. Engelman presided (Tr. 275). Plaintiff, unrepresented, testified. (Tr.

-1-

279-296). Michele Robb, acting as Vocational Expert (VE) also testified (Tr. 297-301). On April 13, 2006, ALJ Engelman found that although Plaintiff was unable to perform her past relevant work, she retained the ability to perform a significant number of unskilled, sedentary jobs (Tr. 20-21). On August 19, 2006, the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on October 13, 2006.

## BACKGROUND FACTS

Plaintiff, born January 24, 1961 was age 45 when the ALJ issued his decision (Tr. 15, 39). She received a GED and worked previously as a store manager (Tr. 46, 51). Plaintiff alleges that a herniated disc and arthritis prevent her from working (Tr. 45).

### A. Plaintiff's Testimony

Plaintiff, unrepresented, testified that she had undergone three back surgeries, stating that her condition had worsened since the last operation (Tr. 279). Plaintiff reported that she received a GED and completed one semester of college (Tr. 280). She stated that her former work as a retail manager entailed lifting up to 40 pounds, along with supervising other employees (Tr. 280-281). She stated additionally that her position required her to stand constantly (Tr. 281). Prior to her work in retail management, Plaintiff indicated that she had worked in a restaurant as a waitress, hostess, and manager (Tr. 282). Plaintiff reported that she injured her back in 2002 while at work and that she received a Workers' Compensation settlement of approximately $84,000 (Tr. 282-283).

Plaintiff testified that despite three surgeries, she continued to experience left leg spasms, rib cage pain, and shoulder swelling (Tr. 285). She stated that she refused to take opiates, although regularly experiencing level "five to ten" pain on a scale of one to ten (Tr. 288). She estimated that she could sit, stand, or walk for a maximum of 90 minutes (Tr. 288). She acknowledged driving short distances regularly, but alleged that she was unable

to perform housework or grocery shopping without medication (Tr. 289).

Plaintiff opined that she would be unable to perform her former work as a retail manager even if the job were modified to preclude lifting, stating that sitting for extended periods created pain (Tr. 291). She added that constant pain made her irritable, adding that her family's monetary problems exacerbated her stress, characterizing her financial situation as "a whirlwind of nightmares," including bankruptcy[1] (Tr. 291, 295, 296).

### B. Medical Evidence

#### 1. Treating Sources

In January 2001, Plaintiff sought treatment for right lower back pain following a work-related injury (Tr. 138). Syed Shareef, M.D., noted that Plaintiff declined to fill prescriptions for Vicodin, Motrin, or Valium, despite complaining of constant pain (Tr. 138). A February 2001 followup visit showed "[s]lowly resolving lumbosacral strain with some intermittent symptoms of sciatica on the right. Will begin physical therapy as soon as possible" (Tr. 144). Treating notes from the following month state that Plaintiff had begun physical therapy, and exhibited a normal gate (Tr. 152). The following month, Alan Drucker, M.D., deemed Plaintiff's improvement "significant," finding that she could return to work with a preclusion on repetitive bending and lifting over five pounds (Tr. 158-159). In June 2001, Plaintiff reported renewed pain upon lifting (Tr. 165). In October 2001, she reported back and leg pain, back tightness, and knee stiffness after falling (Tr. 176). The following month, she received lumbar epidural steroid injections without complications, but reported renewed discomfort in December, 2001 (Tr. 177-178). An MRI showed a "circumferential bulge of the intervertebral disc at L4-L5" (Tr. 183). In June 2002, Plaintiff underwent a

---

[1]Plaintiff's husband, Thomas Miracle, testified briefly, concurring with his wife's account of her physical condition (Tr. 296-297).

laminectomy without complications (Tr. 194, 206). In October 2002, she sought emergency treatment after tripping (Tr. 116). After receiving a prescription for Valium and Skelaxin, Plaintiff was released (Tr. 117).

In June 2003, Rahul Vaidya, M.D., noted that a second surgery had revealed extensive scar tissue, opining that Plaintiff "was not ready to go back to work" (Tr. 214, 224). An August 2003 MRI showed "a mild amount of peridural and perineural fibrosis" but otherwise unremarkable results (Tr. 220). Imaging studies performed the same month showed "electrodiagnostic evidence of bilateral, minimal to mild carpal tunnel syndrome" ("CTS") (Tr. 221). In December 2004, Dr. Vaidya opined that Plaintiff could return to work indefinitely if precluded from lifting over ten pounds or repetitive squatting, bending, or lifting (Tr. 253). However, in February 2005, Vaidya stated that he was "not sure that she will improve to the point where she will be able to work" (Tr. 251). In November 2005, Vaidya, opining that Plaintiff "will possibly require another surgery," stated further that he believed she was "fairly disabled from her situation" (Tr. 249).

### 2. Consultive and Non-Examining Sources

In May 2002, Grant J. Hyatt, M.D., examined Plaintiff noting a history of lumbar spinal stenosis at level L4-5 with degenerative disc and joint disease (Tr. 113). Noting that Plaintiff had sustained a January 2001 work injury, Hyatt noted that she demonstrated a limited range of lumbar spine motion (Tr. 106, 111). Hyatt noted further that Plaintiff's "stance and gait were within normal limits" and an absence of muscle atrophy (Tr. 111).

A November 2003 Residual Functional Capacity Assessment found that Plaintiff retained the ability to lift a maximum of 10 pounds; stand or walk for two hours in an eight-hour workday, and sit for up to six hours (Tr. 98). The report found further that Plaintiff was limited to occasional pushing and pulling in the upper and lower extremities (Tr. 98).

Plaintiff was further limited to *occasional* balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, but precluded from all ladder, rope, or scaffold climbing (Tr. 99). Her manipulative limitations consisted of *occasional* reaching, and *frequent* (as opposed to *constant*) handling (Tr. 100). The report found that Plaintiff should avoid concentrated exposure to vibration and machinery, along with a preclusion on working at elevated heights (Tr. 101). The report found the absence of visual or communicative limitations, concluding that "Claimant should be able to do sedentary work by 4/1/04 even with mild upper extremity restrictions" (Tr. 100, 101, 103).

In January 2004, William Higginbotham, M.D., performed an examination of Plaintiff on behalf of her long-term disability provider (Tr. 230). Plaintiff reported right leg numbness and difficulty walking for extended periods (Tr. 230-231). Higginbotham noted that Plaintiff stood "listing slightly toward the left side," with "some decrease in strength," but no atrophy (Tr. 232). He opined that Plaintiff's symptoms were attributable to a "re-accumulation of scar tissue or perhaps . . . compression on nerve roots," noting that "[h]er symptoms appear to be consistent with her clinical complaints" (Tr. 233). An April 2005 evaluation on behalf the long-term provider, noting that Plaintiff had undergone a third surgery in July 2004, again found the absence of muscle atrophy (Tr. 246). The report concluded by finding that Plaintiff should be restricted to "a sit-down job with a stand-up option" (Tr. 247).

### C. Vocational Expert Testimony

VE Michele Robb classified Plaintiff's former work as a photography studio manager as semi-skilled at the medium level of exertion (Tr. 86, 297). The ALJ then posed the following hypothetical question:

> "[L]et's assume that we have a 45-year-old claimant with the education described and the work history. There was work more than 15 years ago that I'm not going to consider but you didn't either. Let's start out by saying light work but it's a limited range of light work. Not lifting over ten pounds, and

the ability to sit or stand during the workday. Let's start there. First of all,
would any of the skills transfer to jobs that are less physically demanding?

(Tr. 298). Based on the above question, the VE found that Plaintiff possessed the transferrable skills to perform the job of a retail store manager (1,000 jobs existing in the lower peninsula of Michigan) (Tr. 299). The VE testified further that if Plaintiff were limited to sedentary, unskilled work, she could perform the work of a cashier (21,500) and information clerk (13,400), office clerk (12,600) (Tr. 299). The VE stated that her job findings were consistent with the Dictionary of Occupational Titles ("DOT") (Tr. 299).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Engelman found the severe impairments of degenerative disc disease of the lumbar spine and carpal tunnel syndrome (Tr. 15, 20). Nonetheless, he determined that although Plaintiff experienced severe impairments, they neither met nor equaled any impairment listed in Appendix 1 Subpart P, Regulations No. 4. (Tr. 15, 20).

Adopting the VE's job findings, the ALJ concluded that although Plaintiff was unable to perform her past relevant work as a photography store manager, she retained the following residual functional capacity:

> "To perform a significant range of sedentary work activity that requires lifting up to ten pounds. However, the claimant should avoid work activity that requires repetitive lifting, bending, stooping or overhead reaching. The claimant also requires the ability to alternate between sitting and standing positions at will"(Tr. 26).

The ALJ rejected Plaintiff's alleged degree of limitation, finding that her claims were "not totally credible" (Tr. 20). He cited a consultive physician's finding that although Plaintiff used a walking cane, she did not exhibit lower extremity muscle weakness or atrophy (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Substantial Evidence

Plaintiff argues that ALJ Engelman erred by discounting Dr. Vaiya's opinion that she was permanently disabled. *Plaintiff's Brief* at 14. On a related note, she contends that the finding that she could perform exertionally light or sedentary work stands unsupported by the record. *Id.* at 14. Finally, Plaintiff faults the ALJ for discrediting her allegations of disabling pain, arguing that objective medical evidence supports her claims. *Id.* at 16.

Generally, "the reports of physicians who have treated a patient over a period of time . . . are given greater weight than . . . physicians employed and paid by the government . . ." *Allen v. Califano,* 613F.2d 139, 145 (6th Cir. 1980); 20 C.F.R. §404.1527(d) (evaluating evidence from treating sources). *See Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991)( "[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference.") In *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004), the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

The ALJ's opinions, discussion, and determination of Vaidya's opinion does not constitute grounds for reversal. First, the ALJ, addressing Vaidya's November 2005 finding that Plaintiff was "fairly disabled," reasonably found that the treating physician, aware that Plaintiff had applied for Workers' Compensation, was referring to his patient's past relevant work (performed at the medium level of exertion) rather than the complete prohibition of all gainful activity. *Compare Tr.* 249, 250.

Next, assuming that Vaidya's opinion can be construed as a disability pronouncement, pursuant to *Wilson, supra*, substantial evidence amply supports the opposite conclusion. An April 2005 evaluation by another physician concludes that Plaintiff could perform "a sit-down job with a stand-up option" (Tr. 247). Even more significantly, in December 2004 Dr. Vaidya, listing Plaintiff's workplace limitations with a specificity absent from his later reports, found that she could work "indefinitely" if precluded from lifting over ten pounds or repetitive squatting, bending, or lifting (Tr. 253).

Plaintiff's additional argument that the case should be remanded because she cannot perform exertionally light work is based on an erroneous reading of the record. As discussed above, although the hypothetical question posed at the hearing included an ability to perform light work, the limitations were then clarified to restrict Plaintiff to only sedentary work.[2]

---

[2] The VE correctly pointed out that the hypothetical question, by limiting the individual to a maximum of 10 pounds lifting, actually described *sedentary*, rather than *light* work. Exertional levels are generally and most importantly distinguished by lifting requirements. *Bady v. Sullivan,* L 107293, 2 (N.D.Ill.,1992). *See also Grindle v. Sullivan,* 774 F.Supp. 1501, 1511 FN9 (N.D.Ill.,1991). 20 C.F.R. §404.1567(a) states that "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

On the other hand, 20 C.F.R. § 404.1567 (b) states in pertinent part that *light* work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

After stating clearly that the ten-pound weight limitation and the sit/stand option set out in the hypothetical question restricted Plaintiff to *sedentary* work, the VE found that Plaintiff could perform the work of a cashier, gas station attendant, and information clerk (Tr. 299-300). Moreover, as discussed above, the ALJ's conclusion that Plaintiff could perform sedentary work for at least of portion of the period in question is consistent with assessments by Drs. Hyatt, Vaidya, and Higginbotham (Tr. 103, 111, 247, 253).

Likewise, Plaintiff's argument that the ALJ impermissibly discounted her allegations of disability fails.[3] Although objective medical evidence supports Plaintiff's claims of frequent discomfort as a result of her back condition (*see* Tr. 233), her more general allegation that she was permanently incapable of any gainful employment stands at odds with the observations and conclusions of her treating and consulting physicians.

### B. A Full and Fair Hearing

Plaintiff, now represented by counsel, argues that her entitlement to benefits is underscored by the ALJ's offer to award her benefits for the closed period of May 15, 2002 to February 14, 2006. *Plaintiff's Brief* at 7; Tr. at 279. The ALJ's offer to grant her benefits for the closed period reads as follows:

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."(emphasis added).

[3]The ALJ's credibility determination is guided by SSR 96-7p, which mandates that:

> "the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

*Id.*

ALJ: "Okay, and I am prepared to grant you what's known as a closed period of disability. That is from May 15 of '02 and I'd be even willing to go through today's date. But if you want to continue to argue that you can't work at any job at all then we'll go through with the hearing. So, I don't know if I explained myself well enough so that you understand what I said"

Plaintiff: "Not actually."

(Tr. 279). The ALJ then commenced the hearing.

Although an ALJ cannot properly assume the role of counsel, "[h]e acts as an examiner charged with developing the facts." *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (6th Cir. 1983); *Richardson v. Perales,* 402 U.S. 389, 411 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971). Further, "where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role" in the proceedings. *Id.; Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981). *Lashley* states further that upon judicial review, the court will "scrutinize the record with care where the claimant appeared before the administrative law judge without counsel." *Id.* at 1052 (internal citations omitted). "The determination in each case must be made on a case by case basis." *Id*. However, "the mere fact that a claimant is unrepresented is not grounds for reversal." *Born v. Secretary of Health & Human Services* 923 F.2d 1168, 1172 (6th Cir. 1990), *citing to Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 856 (6th Cir.1986).

In the present case, unlike *Lashley*, ALJ Engelman actually took pains to develop the record by questioning Plaintiff at length about her daily activities, residual abilities, and level of pain. Moreover, the February 14, 2006 hearing lasted the better part of an hour (Tr. 277, 303). However, while in a narrow sense, ALJ Engelman afforded Plaintiff a hearing, it is apparent from the above-cited transcript that she was unaware that she was eligible for a lump sum for a closed period of disability. Therefore, this *pro se* Plaintiff did not either

-11-

understand or have a meaningful opportunity to develop this issue, and thus was denied her right to a full and fair hearing.

The case should also be remanded for reasons other than Plaintiff's simple failure to comprehend her options. In light of the ALJ's own acknowledgment that Plaintiff was entitled for at least a closed period of benefits, his subsequent finding that she was completely ineligible for benefits requires clarification.

> "In determining whether Plaintiff is entitled to disability benefits, it is also necessary to consider every period during which Plaintiff may have been disabled. . . . Under the circumstances, the ALJ should have considered not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any *closed, continuous period* of not less than 12 months, following the date of his claim."

*Pena v. Barnhart,* 2002 WL 31487903, *11 (S.D.N.Y. 2002)(emphasis added). Plaintiff's entitlement to a closed period of benefits is supported by the transcript which includes numerous work-release notes by various physicians.[4]

A remand is required, if for nothing else, to resolve the conflict between theALJ's acknowledgment that Plaintiff is eligible for a closed period of benefits and his unfavorable administrative decision. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration,* 55 Fed.Appx. 333, 339, WL 236419, 5 (6th Cir. 2003) (*quoting Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995)) While this record does not justify a remand for an award of continuing benefits, *see Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318

---

[4]Plaintiff's work releases include the following periods: January- February 2001 (Tr. 139), March-June/July 2001, May-June 2001 (Tr. 169), February-March 2002 (Tr. 191), October - December 2002 (Tr. 198, 199), February-May 2003 (Tr. 205) and June-August 2003(Tr. 228).

(6th Cir. 1994)[5], it does require a remand to determine whether Plaintiff is entitled to a closed period of benefits.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding the case for a determination of whether Plaintiff is entitled to a closed period of benefits.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the

---

[5]*Faucher* holds that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."

objections.

          S/R. Steven Whalen
          R. STEVEN WHALEN
          UNITED STATES MAGISTRATE JUDGE

Dated: September 18, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 18, 2007.

          S/Gina Wilson
          Judicial Assistant